**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MITCHELL PRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 2:09-CV-92-TJW |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## APPLE INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)

For the convenience of parties and witnesses, and in the interest of justice, Apple Inc. ("Apple") hereby moves this Court for an order transferring this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).  Pursuant to Local Rule CV-7(g), Apple respectfully requests an oral hearing on this motion.

## I.      INTRODUCTION

This patent infringement case has substantial ties and connection to the Northern District of California and virtually no ties or connection to the Eastern District of Texas.  The Plaintiff, Mitchell Prust, is an individual inventor who lives in Minnesota.  Apple, the only defendant in this case, is a corporation whose principal place of business is in Cupertino, California.  Thus, of the two parties in this case, one is headquartered in the Northern District of California – the transferee venue – and none of the parties are headquartered in Texas.

Because Apple's product development is based in Cupertino, most of the likely documentary evidence and key witnesses in this case are located in the Northern District of California.  This includes documents pertaining to the research, design, development of, and revenue from, Apple products and services, as well as potential witnesses with knowledge about such products and services.  While Apple has a single retail store in Plano, Texas, there are no relevant witnesses at that location.  In his complaint, Mr. Prust fails to identify any specific Apple product that allegedly infringes his patents, much less products that are made, used or sold in Texas.  And although some evidence and potential witnesses in this case may be located in Minnesota, where Mr. Prust resides, Apple is not aware of any evidence or likely witnesses located in the Eastern District of Texas.

Accordingly, because there are only two parties in this case, neither party is headquartered in Texas, and the overwhelming majority of witnesses and evidence in this case is concentrated in California, the Northern District of California is clearly more convenient than the Eastern District of Texas and this case should be transferred there.

## II.     FACTUAL BACKGROUND

Plaintiff Mitchell Prust filed the present patent infringement suit on April 2, 2009.  According to the Complaint, Mr. Prust lives in St. Paul, Minnesota.  (Compl. ¶ 1).  Apple is a California corporation whose principal place of business is in Cupertino, California, which is in the Northern District of California.  (Declaration of Joni B. Reicher ("Reicher Decl.") ¶ 2).  The Complaint alleges that certain unidentified Apple "products and/or services, including software

1

products and electronic data storage products" infringe U.S. Patent Nos. 6,714,968; 6,735,623; and 6,952,724 (the "Asserted Patents").  (Compl. ¶¶ 10, 17 & 24).  Each of the Asserted Patents identifies Mitch Prust, a resident of Minnesota, as the sole inventor.  The Asserted Patents also identify Shumaker & Sieffert, P.A., a law firm located in St. Paul, Minnesota, as the firm that prosecuted them.

In response to a request for a more specific identification of the accused products, Mr. Prust's counsel declined to identify specific Apple products.  Instead, Mr. Prust's counsel stated that "the complaint, in combination with the patents - which are directed generally to networked storage products, systems and services - presents a good early picture of the types of Apple products at issue here."  (Declaration of Rudy Y. Kim "Kim Decl.") ¶¶ 2 & 3).  Mr. Prust's counsel noted that "Wam!Net and its 'SiLO' product are mentioned" in the patent figures and stated that "[w]e believe that Apple's relationship with Wam!Net, especially regarding the SiLO product, is at issue in this case."  (*Id.*).  Wam!Net Inc. appears to be a Minnesota company for whom Mr. Prust previously worked, and SiLO appears to be a remote data storage service that Wam!Net introduced and later launched under the name of "WorkSpace" in 2000.  (*Id.* ¶ 4 & 5).

Even when viewed in combination with the patents and the references to Wam!Net's SiLO product, however, the complaint fails to identify any specific accused Apple products.  Apple's product research, design and development activities primarily take place in Cupertino.  (Reicher Decl. ¶¶ 2, 4).  This geographic focus is no different for Apple's "networked storage products, systems and services."  (*Id.* ¶ 4).  Consequently, virtually all of Apple's business records and documents relating to the research, design, development of, and revenue from, any Apple product or service that might be accused of infringement in this case are located in the Northern District of California.  (*Id.*).

Likewise, current and former Apple employees with knowledge regarding the research and development of Apple's "software products and electronic data storage products" are located in the Northern District of California.  (*Id.* ¶ 5).  Such witnesses will have knowledge relevant to the issues of non-infringement, lack of willfulness, and damages, among other issues.  Although

Mr. Prust has not identified specific Apple products that are accused of infringement, based on his very limited description of what products and services might be implicated and the information that Apple has gathered to date, the following Apple employees in Cupertino may have knowledge regarding the development of potentially relevant products and services:

- Phil Peterson – Director, MobileMe – BaSE
- Chris Sharp – Manager, Software Engineering Applications
- Jake Baumgarten – Manager, Software Engineering Applications
- Scott Ryder – Director, Software Engineering Applications

(*Id.* ¶ 6).  In addition, the following Apple employees in Cupertino may have knowledge regarding Mr. Prust and his former employer Wam!Net:

- C.K. Haun – Senior Director, Worldwide Developer Technical Services
- Jason Yeo – Manager, Worldwide Developer Relations Group

(*Id.*).

Additionally, based on the very limited description of what products and services might be implicated in this lawsuit and the information that Apple has gathered to date, the following former Apple employees may also have knowledge regarding the development of potentially relevant products and services:

- Stephane Lunati – Manager, Software Engineering Applications
- Rob Schoeben – Marketing VP, Apps Marketing Administration
- David Conway – Product Line Marketing Manager, .Mac Marketing
- Joe Hayashi – Product Marketing Director, Productivity Marketing

(*Id.* ¶ 7).  Based on currently available information, all of the above-identified former employees reside in the Northern District of California.  (*Id.*).  In addition, the following former Apple employees may have knowledge regarding Mr. Prust or Wam!Net:

- R.E. Richardson – Vice President, Worldwide Developer Relations
- Roger Siminoff – Manager, Enterprise Sales

(*Id.*).  Based on currently available information, each of the above-identified former employees resides in the Northern District of California.  (*Id.*).

Conversely, none of the likely evidence or witnesses is located in Eastern District of Texas.  (*Id.* ¶¶ 5, 9 & 10).  Apple's sole presence in the Eastern District of Texas is a single retail store in Plano, Texas, which is just one of over 200 stores located nationwide.  (*Id.* ¶ 9).  Apple's Plano store is over 160 miles from the federal courthouse in Marshall.  (*Id.* ¶ 10).  No potential witnesses in this case work at the retail store in Plano.  (*Id.* ¶ 9).  Aside from the one retail store in Plano, Apple does not maintain any other facilities, employees, or documents in the Eastern District of Texas.[1]  (*Id.* ¶ 10).  Mr. Prust has not yet identified any specific accused Apple products and Apple is not presently aware of any likely evidence or witnesses located in the Eastern District of Texas.  (*Id.* ¶¶ 5, 9 & 10).

## III.    LEGAL STANDARDS

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [the general venue statute] by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The party seeking transfer of venue must show "good cause."  *Volkswagen II*, 545 F.3d at 315.  "[W]hen the movant demonstrates that the transferee venue is clearly more convenient" it has satisfied its burden.  *Dwyer v. City of Corinth*, No. 2:08-cv-409, 2009 U.S. Dist. LEXIS 26926, at *3 (E.D. Tex. Mar. 30, 2009).  "Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its

---

[1] Although Apple has employees in Austin, Texas, none of these employees have any significance to this case to the extent it relates to products or services for accessing a remote storage server utilizing multiple access interfaces executing on the remote server.  (Reicher Decl. ¶ 8).

discretion in light of the particular circumstances of the case." *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 999 (E.D. Tex. 2009); *Volkswagen II*, 545 F.3d at 311 (noting that the district court's discretion "has limitations imposed by the text of § 1404(a) and by the precedents of the Supreme Court and of [the Fifth Circuit] that interpret and apply the text of § 1404(a)").

In deciding a transfer motion, the district court first must determine whether the claims "might have been brought" in the suggested transferee venue. *Volkswagen II*, 545 F.3d at 312. The district court must then balance the convenience of the parties in both venues by considering private and public interest factors. *See id.* at 315.  The private interest factors include:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (quoting the same factors) (hereinafter "*TS Tech*").  The public interest factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

The convenience and cost of attendance of witnesses is an important factor. *See In re Genentech*, Misc. Docket No. 901 (Fed. Cir. May 22, 2009).  This factor weighs in favor of transfer when a substantial number of witnesses reside in the transferee venue, particularly when the transferee venue is more than 100 miles from the Eastern District of Texas. *See id.* at 6-9. Additionally, given that in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* at 10 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

## IV.    ARGUMENT

### A.    This Action "Might Have Been Brought" In The Northern District Of California.

In deciding a transfer motion, the district court first must determine whether the claims "might have been brought" in the suggested transferee venue. *Volkswagen II*, 545 F.3d at 312. Here, the Northern District of California would have subject matter jurisdiction over this federal patent suit under 28 U.S.C. §§ 1331 and 1338. Additionally, venue would be proper under 28 U.S.C. § 1400(b), because Apple's corporate headquarters and principal place of business are in the Northern District of California. *See id.* ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides."). Accordingly, it is beyond dispute that Mr. Prust could have brought this action in the Northern District of California.

### B.    Each Of The Section 1404 Private Interest Factors Strongly Favor Transfer To The Northern District Of California.

#### 1.    The Convenience Of The Parties And Witnesses Favors Transfer To The Northern District Of California.

The convenience of the witnesses and parties is one of the most important factors in a transfer analysis. *See In re Genentech*, Misc. Docket No. 901 at 5 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). Here, the Northern District of California is "clearly more convenient" because of its proximity to the parties and the likely witnesses in this case. As explained by the Fifth Circuit, "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) ("*Volkswagen I*"); *Volkswagen II*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."). Because of the increased costs often associated with witnesses attending trial far from home, the Fifth Circuit established the "100-mile" rule: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles,

the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05.

Apple, the sole defendant in this case, is a California corporation headquartered in Cupertino, which is in the Northern District of California.  (Reicher Decl. ¶ 2).  Apple's management and primary research and development facilities are located in Cupertino.  (*Id.*).  Therefore, Apple's likely potential witnesses in this case reside in Northern California.  (*Id.* ¶¶ 5 & 6).[2]

By contrast, Marshall is over 1,500 miles from Apple's principal place of business and the residences of Apple's likely witnesses.  (*Id.* ¶¶ 2, 5 & 6; Kim Decl. ¶ 6).  Thus, applying the "100-mile" rule to the circumstances of the present case, this factor strongly favors transfer to the Northern District of California.  Indeed, in *Volkswagen II*, the Fifth Circuit emphasized this factor where the transferee district was only 155 miles away.  545 F.3d at 317 ("As to the witnesses identified by Volkswagen, it is apparent that it would be more convenient for them if this case is tried in the Dallas Division, as the Marshall Division is 155 miles from Dallas.").  Here, where the transferee district is over 1,500 miles away, transferring this case to the Northern District of California would greatly reduce the distance that Apple's witnesses must travel.

Mr. Prust lives in St. Paul, Minnesota.  (Compl. ¶ 1).  Although he chose to file in Marshall, Texas, the Northern District of California is just as convenient to St. Paul as is Marshall.  The number of daily direct flight options between St. Paul and the Northern District of

---

[2] A party seeking transfer is not required to submit an affidavit identifying each proposed witness and outlining their specific testimony.  *See Odom*, 596 F. Supp. 2d at 1001; *Volkswagen II*, 545 F.3d at 317 n.12.  Nor are movants required to identify "key witnesses" at this early stage in litigation.  *See In re Genentech*, Misc. Docket No. 901 at 7.  It is often preferable for a movant to seek transfer as early in a case as practicable to avoid wasting judicial and party resources.  The earlier a party moves, however, the less information that party will have about many key issues in the case, particularly those in possession of the opposing party, including infringement contentions.  This is particularly true in the present case where Mr. Prust has refused to name even a single allegedly infringing Apple product.  *Cf. Tridle v. Union Pacific R. Co.*, No. 9:07-cv-213, 2008 WL 4724854, at *4 (E.D. Tex. Oct. 15, 2008) (noting that "[i]t *appears* that the majority of *potential* witnesses are located within the [transferee] District," and concluding that "the convenience of the witnesses and parties overall favors a transfer" (emphases added)).

California is comparable to the number of flight options between St. Paul and the Eastern District of Texas.  (Kim Decl. ¶ 7).  Furthermore, the overall travel time from St. Paul to the federal courthouse in San Jose, California is less than the overall travel time from St. Paul to the federal courthouse in Marshall, Texas.[3]  (*Id.* ¶¶ 8-10).  Therefore, the Northern District of California is just as convenient to Mr. Prust and the other Minnesota witnesses as the Eastern District of Texas.

For the vast majority of witnesses in this case, the Northern District of California is far more convenient than the Eastern District of Texas.  It appears that Mr. Prust is not practicing the alleged inventions of the Asserted Patents.[4]  In patent infringement cases, especially where the plaintiff does not practice the alleged invention, the bulk of the witnesses with discoverable evidence will come from the defendant.  *See In re Genentech*, Misc. Docket No. 901 at 10 (citing *Neil Bros. Ltd.*, 425 F. Supp. 2d at 330).  In particular, and as described in greater detail above and in Apple's supporting papers, witnesses will likely include Apple employees who reside in the Northern District of California and who are either involved in the research and development of Apple's "software products and electronic data storage products" or who have knowledge regarding Mr. Prust and his former employer Wam!Net.  (Reicher Decl. ¶¶ 5 & 6).  In addition to the specific individual Apple employees identified in this motion, there are other employees who work at Apple's headquarters in Cupertino who may have knowledge about the accused products that have not yet been identified by Mr. Prust.  There are also several non-party witnesses,

---

[3] The quickest trip from St. Paul to the courthouse in San Jose is approximately four hours and ten minutes (a four hour flight plus a ten minute drive), whereas the quickest trip from St. Paul to the Marshall courthouse is approximately five and a half hours (a two hour and thirty minute flight plus a three hour drive).  (Kim Decl. ¶¶ 8-10).

[4] In the Complaint, Mr. Prust did not assert that he produces products that practice the alleged invention, and claimed damages only in the form of a reasonable royalty.  Our own research on the Internet revealed no such commercial products either.  (Kim Decl. ¶ 11).  Thus, it is likely Mr. Prust does not have a commercial operation that is implicated by the Asserted Patents.  Even if he does, however, the number of witnesses from Apple will likely be far greater than that from Mr. Prust, given the relative size of operations between the two parties and the fact that Apple is the party accused of infringement.

including former Apple employees, who are located in the Northern District of California and may have knowledge regarding potentially relevant products and services or who have knowledge regarding Mr. Prust or Wam!Net.  (*Id.* ¶ 7).

Finally, this is not a case involving multiple defendants.  Apple is the sole defendant and its foreseeable witnesses are all concentrated in one part of the country, and located within the transferee forum.  *Compare Odom*, 596 F. Supp. 2d at 1004 (granting transfer where there was a single defendant, neither party was a Texas corporation and the majority of witnesses were located in the Northwest) *with MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289, 2009 U.S. Dist. LEXIS 13676, at *20-21 (E.D. Tex. Feb. 23, 2009) (denying transfer where there were multiple defendants, the plaintiff was a Texas corporation and the witnesses were not concentrated).  Thus, while a handful of potential witnesses reside in Minnesota, the vast majority of relevant witnesses resides in the Northern District of California.  As the Federal Circuit recently clarified, the transferee district need not be more convenient for all of the witnesses; this factor weighs in favor of transfer if a "substantial number of material witnesses reside within the transferee [forum] . . . and no witnesses reside within the [transferor forum]." *In re Genentech*, Misc. Docket No. 901 at 9.  That is precisely the case here.[5]

### 2.    The Relative Ease Of Access To Sources Of Proof Favors Transfer To The Northern District Of California.

This factor favors transfer in the present case because the bulk of documentary and physical evidence potentially relevant to the case is located in the Northern District of California. *See TS Tech.*, 551 F.3d at 1321 (concluding that "[b]ecause all of the physical evidence, including the [accused] headrests and the documentary evidence, are far more conveniently located near the [transferee] venue, the district court erred in not weighing this factor in favor of

---

[5] The parties have yet to identify expert witnesses, but this factor favors transfer even if Mr. Prust identifies an expert witness who resides within the Eastern District of Texas.  As this court has previously observed, "[t]he convenience of expert witnesses is generally accorded little weight in the transfer analysis." *MedioStream, Inc. v. Acer Amer. Corp.*, No. 2:07-cv-376, 2008 U.S. Dist. LEXIS 74066, at *10 (E.D. Tex. Sept. 26, 2008).

transfer").  As the party accused of infringement, most of the relevant evidence will likely come from Apple.  The vast majority of Apple's electronic and physical documents are located in Northern California.  For example, virtually all of Apple's business documents and records relating to the research, design, development, marketing, and sales of any Apple product or service that might be accused of infringement in this case are located at Apple's headquarters in Cupertino, California.  (Reicher Decl. ¶ 4).

Applying Fifth Circuit law, the Federal Circuit recently held that it was error to consider this factor as neutral merely because many of the documents were stored electronically.  *TS Tech.*, 551 F.3d at 1320-21.  The court explained that the fact "that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."  *Id.* at 1321 (quoting *Volkswagen II*, 545 F.3d at 316).  The Federal Circuit further clarified in *In re Genentech* that even if the documents can be stored and transported electronically, the physical location of relevant documents and the unnecessary burden on the movant to transport such documents is still a factor that must be considered.  *In re Genentech*, Misc. Docket No. 901 at 10-11.  And, as in the present case, where the vast majority of the relevant documents for the case are in one forum, this factor weighs in favor of transfer to that forum.  *See id.* at 11.

### 3. The Availability Of Compulsory Process To Secure The Attendance Of Witnesses Favors Transfer.

In *Volkswagen II*, the Fifth Circuit found that the availability of compulsory process weighed in favor of transfer from the Marshall Division to the Dallas Division because the Dallas Division "enjoy[s] *absolute* subpoena power for both depositions and trial."  545 F.3d at 316.  Likewise, this Court should transfer the present case because the Northern District of California has "absolute subpoena power" over a majority of likely witnesses in this case, which includes several non-party witnesses.  *See* Fed. R. Civ. P. 45(a)(2)(A); Fed. R. Civ. P. 45(b)(2); Fed. R. Civ. P. 45(c)(3)(A)(ii).  For example, as identified above, several former Apple employees may have knowledge regarding potentially relevant products and services.  These

former employees reside within Northern California, and are subject to the subpoena power of the Northern District of California.

In contrast, Apple is not aware of any potential witnesses in the Eastern District of Texas who could be compelled to appear in that district.  (Reicher Decl. ¶¶ 5, 9 & 10).  As the Federal Circuit recently held in a case involving similar facts, where there are a substantial number of witnesses within the subpoena power of the transferee forum and no witness who can be compelled to appear in the Eastern District of Texas, "the fact that the transferee venue is a venue with usable subpoena power [] weighs in favor of transfer, and not only slightly."  *In re Genentech*, Misc. Docket No. 901 at 10.  While it is possible that Mr. Prust may identify non-party witnesses from Minnesota, this factor weighs in favor of transfer because no likely witnesses reside within the Eastern District of Texas.  *See Stephens v. Western Pulp Prods.*, No. 1:04-cv-152, 2005 U.S. Dist. LEXIS 40442, at *8 (E.D. Tex. Dec. 8, 2005) (explaining that "when nearly all witnesses live outside of [the current venue], the factor is tipped back toward transfer").

### 4. There Are No Practical Problems And Mr. Prust's Choice Of Venue Should Be Given Little Or No Weight.

There are no practical problems that weigh against transferring this case.  This lawsuit was filed just over two months ago, no discovery has taken place, and this is the first motion that the Court will have to consider.  There has been no previous litigation in the Eastern District of Texas or elsewhere that has involved the "same parties, witnesses, evidence, and facts."  *In re Genentech*, Misc. Docket No. 901 at 12; *cf. In re Volkswagen of America, Inc.*, Misc. Docket No. 897 (Fed. Cir. May 22, 2009).  Nor is there any issue regarding the transferee court having jurisdiction over the defendant – Apple – in the transferred complaint.  *In re Genentech*, Misc. Docket No. 901 at 12.  Accordingly, there are no practical problems weighing against transfer to the Northern District of California.

Furthermore, under the circumstances of this case, Mr. Prust's choice of venue should be given little or no weight.  "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of

venue as a distinct factor in the § 1404(a) analysis." *TS Tech.*, 551 F.3d at 1320 (citing *Volkswagen II*, 545 F.3d at 314 n.10).  Instead, "the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue." *Id.*  Because neither of the parties have their principal places of business or headquarters in Texas, much less the Eastern District of Texas, Mr. Prust's choice of venue should receive little or no deference here.  *See Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 703 (E.D. Tex. 2007) (noting that "[t]he plaintiff's forum choice is given less weight when the plaintiff brings suit outside of its home district").

Accordingly, each of the Section 1404 private interest factors greatly favor transferring this case to the Northern District of California.

### C.    The Section 1404 Public Interest Factors Also Favor Transfer To The Northern District Of California.

As noted by this Court, in patent cases, the interests of justice may be determinative in deciding the proper venue in a transfer motion, "even if the convenience of the parties and witnesses might call for a different result." *Jackson v. Intel Corp.*, No. 2:08-cv-154, 2009 U.S. Dist. LEXIS 22117, at *11 (E.D. Tex. Mar. 19, 2009).  Here, transfer is particularly warranted because the convenience of the parties and witnesses and the interests of justice all call for the same result.

### 1.    Court Congestion And Familiarity With The Applicable Law Are Factors That Favor Transfer Or Are Neutral.

The relative administrative difficulties flowing from court congestion weighs in favor of transfer.  While both courts have substantial litigation dockets, recent Federal Judicial Caseload Statistics indicate that cases in the Northern District of California reach disposition more quickly than cases in the Eastern District of Texas.  (Kim Decl. ¶ 12).  Even if some other metric is used to measure court congestion (e.g., using time to trial), this factor does not preclude transfer.  *See Fifth Generation Computer Corp. v. IBM*, 2009 U.S. Dist. LEXIS 12502 (E.D. Tex. Feb. 17, 2009) (granting transfer where transferee venue more congestion); *Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 2009 U.S. Dist. LEXIS 28501 (E.D. Tex. April 3, 2009) (same).

Accordingly, where, as here, "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, Misc. Docket No. 901 at 14.

With respect to familiarity with the law, the Northern District of California and the Eastern District of Texas are equally capable of applying patent law.  Thus, the relative familiarity of the forum with respect to the applicable patent law issues is neutral in the present case and does not weigh against transfer.

### 2. The Interest In Having Localized Interests Decided At Home Favors Transfer To The Northern District Of California.

In its recent *TS Tech* decision, the Federal Circuit addressed the local interest factor by noting that, "[a]s in *Volkswagen I* and *Volkswagen II*, there is no relevant connection between the actions giving rise to this case and the Eastern District of Texas except that certain vehicles containing TS Tech's [accused] headrest assembly have been sold in the venue." *TS Tech*, 551 F.3d at 1321.  In *TS Tech*, "the vast majority of identified witnesses, evidence, and events leading to [the] case involve[d] [the transferee venue] or its neighboring state." *Id.*  The court concluded that "the vehicles containing TS Tech's allegedly infringing headrest assemblies were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue." *Id.* (citing *Volkswagen II*, 545 F.3d at 318 (observing that it "stretches logic" to say the local interest factor weighed against transfer because such rationale "could apply virtually to any judicial district or division in the United States.")).

Similarly, in this case, having localized interests decided at home favors transfer to the Northern District of California.  The vast majority of potential witnesses, evidence and events leading to the development of the accused but unidentified Apple products and services are located or took place in California.  Therefore, the Northern District of California has a strong local interest in this case.

13

In contrast, the citizens of the Eastern District of Texas do not have any unique or particularly meaningful connection to this case.  To the extent the accused products are sold in the Eastern District of Texas, they are sold nationwide.  (Reicher Decl. ¶ 9).  Like the nationwide sales at issue in *TS Tech*, the nationwide sale of any accused Apple products and/or services, including in Texas, does not create a "local interest" in Texas.  *See TS Tech,* 551 F.3d at 1321; *accord Jackson,* 2009 U.S. Dist. LEXIS 22117, at *10.  Accordingly, the Section 1404 public interest factors weigh in favor of transferring this case to the Northern District of California.

## V.    CONCLUSION

For all of the foregoing reasons, the Northern District of California is clearly more convenient to the parties and potential witnesses in this case, and Apple's motion to transfer venue to the United States District Court for the Northern District of California should therefore be granted.

Respectfully submitted,

Eric M. Albritton
Texas State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
(903) 757-8449 (phone)
(903) 758-7397 (fax)
ema@emafirm.com

MORRISON & FOERSTER LLP
Michael A. Jacobs (CA Bar No. 111664)
Richard S.J. Hung (CA Bar No. 197425)
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
E-mail: mjacobs@mofo.com
E-mail: rhung@mofo.com

MORRISON & FOERSTER LLP
Rudy Y. Kim (CA Bar No. 199426)
755 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
E-mail: rudykim@mofo.com

*Counsel for Apple Inc.*

## CERTIFICATE OF CONFERENCE

This motion is opposed.  The conference required by Rule CV-7(h) was conducted on

June 15, 2009. Wesley Hill advised that the Plaintiff is opposed to the relief requested therein.

Eric M. Albritton

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in
compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are
deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R.
Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have
consented to electronic service were served with a true and correct copy of the foregoing by
email, on this the 19th day of June, 2009.

Eric M. Albritton

15