IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MITCHELL PRUST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 2:09-CV-92 |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| APPLE INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**APPLE INC.'S SUR-SURREPLY IN SUPPORT
OF ITS MOTION TO TRANSFER VENUE**

In his opposition, Prust identified no connection between this case and the Eastern District of Texas. Then, almost two weeks *after* Apple filed its reply and just days before filing his surreply, Prust filed a new, separate lawsuit against two much smaller East Texas companies – NetMass Inc. and SoftLayer Technologies, Inc. Prust now alleges for the first time on surreply that his newly-filed lawsuit creates a connection between this case and the Eastern District of Texas and thereby justifies keeping this action in Marshall for reasons of judicial economy.

In view of the overwhelming number of factors favoring transfer, and considering the principles of "convenience and fairness" to all concerned, Prust's belated suit against two local companies – well after Apple moved for transfer – does not justify denial of Apple's motion to transfer to a more convenient forum.

## ARGUMENT

**A. Judicial Economy Does Not Outweigh Witness Convenience And The Other Numerous Factors Favoring Transfer**

As Prust himself recognizes, the convenience of the witnesses and parties is generally the most important consideration in a transfer analysis. *See, e.g.*, *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Cummings v. Sunrise Med. HHG, Inc.*, No. 2:07-cv-189, 2007 U.S. Dist. LEXIS 84961, at *6 (E.D. Tex. Nov. 16, 2007); Prust Surreply at 3 ("The proper inquiry is the convenience of the parties and witnesses . . ."). Unable to identify any specific witnesses or documents in this District (or anywhere else in Texas), Prust instead raises new arguments for the first time on surreply. Prust argues that his new lawsuit against local East Texas companies NetMass and SoftLayer – filed just days before his surreply was due[1] – justifies denying Apple's transfer motion on the basis of judicial economy.

Judicial economy, however, is just one factor in the transfer analysis under § 1404(a). *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Judicial economy is not a dispositive factor, but is weighed against the other factors. *Id.*; *Genentech*, 566 F.3d at 1346

---

[1] Prust's surreply originally was due on August 3. Prust's counsel requested an eight-day extension for certain personal reasons, and Apple agreed. During the extension period, and after the original August 3 deadline, Prust then filed suit against SoftLayer and NetMass on August 5.

(holding that the court gave too much weight to judicial economy); *Fifth Generation Computer Corp. v. IBM*, No. 9:08-cv-205, 2009 U.S. Dist. LEXIS 12052, *15-18 (E.D. Tex. Feb. 17, 2009) (giving greater weight to witness convenience and access to proof, and discounting judicial economy even though it was plaintiff's "strongest argument against transfer"). Here, given the convenience of the witnesses, the lack of ties to the Eastern District of Texas, and the other compelling reasons for transfer, any judicial economy arising from Prust's belated lawsuit against two local companies does not warrant denying Apple's transfer motion.

### B.    Prust's New Lawsuit Will Involve Different Defendants, Different Products, Different Claims and Counterclaims, and Different Evidence

There are significant differences between the defendants in the two cases, their respective technologies and Prust's claims against each defendant. NetMass and SoftLayer are both local, privately-held companies that are much smaller than Apple and neither has offices in California.[2] Moreover, neither company appears to sell any products related to Apple's iTunes or MobileMe – the two accused products identified by Prust in this litigation. Accordingly, given the different defendants and the different accused products, each case will involve distinct discovery and legal issues (*e.g.*, damages-related discovery and infringement analyses). *See, e.g., Third Dimension Semiconductor, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 6:08-cv-200, 2008 WL 4179234, at *2 (E.D. Tex. Sept. 4, 2008) (case involving same patent, but different defendant, irrelevant to transfer analysis); *Connectel, LLC v. Cisco Sys.*, No. 2:04-CV-396, 2005 U.S. Dist. LEXIS 2252, at *10 (E.D. Tex. Feb. 16, 2005) (litigation over same patent in different district irrelevant, as "present case involves a different defendant and different products").

Prust himself repeatedly points to an alleged relationship between Apple and WAM!NET as a source of substantial evidence relating to his claims and Apple's counterclaims. For example, Prust argues that this case involves "substantial" evidence regarding Prust's willful infringement claim purportedly arising from Apple's alleged business negotiations with

---

[2] According to publicly available information, NetMass is apparently an 8-person company in McKinney, Texas with reported sales of only $700K, and SoftLayer is reported as being a 55-person company in Plano, Texas with reported sales of only $5.9M. (Kim Decl., ¶¶ 2, 3; Exs. A, B (Hoover's Reports))

2

WAM!NET.  Prust Surreply at 3.  Prust likewise argues that a number of Apple's defenses and counterclaims "rely almost exclusively on Prust's and WAM!NET's past conduct."  Prust Opp. at 4-5.  Prust further argues that a substantial number of potential witnesses[3] and documents relevant to this case relate to "interactions between Prust, WAM!NET, and Apple."  *Id.* at 4.

But neither SoftLayer nor NetMass had any apparent involvement in the alleged relationship between Apple and WAM!NET.  Indeed, there is no indication that SoftLayer and NetMass ever even heard of Prust, his patents, or WAM!NET before being sued.[4]  Consequently, discovery directed at the "substantial number" of witnesses or documents concerning Apple's alleged relationships with WAM!NET and Prust (including any claims for breach of confidentiality or nondisclosure agreements) will be distinct from the discovery and legal issues in the SoftLayer and NetMass lawsuit.

## C. The Cases That Prust Cites Do Not Support His Judicial Economy Argument

The cases on which Prust relies to support his judicial economy arguments are readily distinguishable.  In *Interactive Music Tech., LLC v. Roland Corp.*, No. 6:07-cv-282, 2008 WL 245142, at *10 (E.D. Tex Jan. 29, 2008), the court *granted* transfer because several of the parties had already litigated over the patent-in-suit in the transferee court.  Likewise, in *Logan v. Hormel Foods Corp.*, No. 6:04-cv-211, 2004 WL 5216126, at * 2 (E.D. Tex. Aug. 25, 2004), the court *granted* transfer because the transferee court was familiar with the patent, having already construed the claims.  Finally, in *MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289, 2009 WL 440627, at *7 (E.D. Tex. Feb. 23, 2009), the court denied transfer in part because the *Markman* hearing was just a few months away, and thus transfer would delay the trial.[5]

Here, there has been no discovery at all and no briefing other than relating to this motion to transfer.  The Court has not yet issued a scheduling order or set a *Markman* hearing, and the

---

[3] Of the forty-four potential witnesses identified by Prust, forty-two were identified as possibly having knowledge regarding alleged interactions between WAM!NET and Apple.
[4] Unlike his complaint against Apple, in his recently-filed complaint against SoftLayer and NetMass, Prust does not allege that either company willfully infringed his patents.  (Kim Decl., ¶ 4; Ex. C (Complaint)).
[5] Prust's reliance on *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 458 (E.D. Tex. 2004), also is misplaced as that case focused on a severance motion under Fed. R. Civ. P. 21, not a transfer motion.

3

parties have not served infringement or invalidity contentions.  Given the early stage of this case and the different defendants and accused products at issue, Prust's new lawsuit does not give rise to any judicial economy that mandates denying Apple's transfer motion.

Moreover, none of the cases that Prust cites supports the proposition that a non-resident plaintiff who lacks any ties to this District and who fails to identify any specific witnesses or documents in this District can avoid transfer simply by suing local companies in a separate lawsuit – particularly when the new lawsuit is filed well after the defendant has moved to transfer.  The Supreme Court has long held that § 1404 requires "individualized, case-by-case consideration of convenience and fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Genentech*, 566 F.3d at 1346.  It would contravene the principles of convenience and fairness to allow and encourage other plaintiffs to sue local East Texas companies in such circumstances merely to avoid transfer.[6]

Given the lack of any other ties between Prust and this case to the Eastern District of Texas, Prust's belated suit against two local companies filed only *after* Apple filed its transfer motion should not be relied upon as a basis for denying Apple's transfer motion.

### D.     The Other Transfer Factors Weigh In Favor Of Transfer

The Northern District of California is clearly more convenient for the parties and witnesses than the Eastern District of Texas.  In its earlier briefing, Apple detailed the many potential witnesses and documents in the Northern District of California and the absence of any witnesses or documents in the Eastern District of Texas.  *See Motiva, LLC v. Nintendo Co. Ltd.*, No. 6:08-cv-429, 2009 WL 1882836, at *6 (E.D. Tex. Jun. 30, 2009) (explaining that transfer is appropriate when "the vast majority of identified documents and witnesses is located in and around the transferee court").  While Prust attempts to minimize the number of witnesses and

---

[6] Notably, this is not the first time that SoftLayer has been drawn into a larger patent dispute.  *See Bedrock Computer Techs. v. SoftLayer Techs.*, No. 6:09-cv-269 (E.D. Tex.).  In that case, SoftLayer and CitiWare Technology Solutions are the only East Texas defendants.  The other defendants – Google, Yahoo!, MySpace, Amazon, PayPal, AOL, Match.com, and CME Group – are significantly larger corporations.

third parties residing in Northern California, the fact remains that Prust has yet to identify *any* specific witnesses or documents in this District or elsewhere in Texas.

Prust also raises other new arguments in his surreply. For example, Prust suggests that the parties should use privately chartered jets to reduce witness travel time. Prust's suggestion ignores the obvious impractical nature of this method of travel.[7]

Finally, Prust alleges that "Apple misapplies *Genentech*" by taking the position that the existence of any documents in Minnesota does not weigh against transfer. Prust's argument lacks merit. In *Genentech*, the Federal Circuit concluded that the "access to evidence" factor favored transfer where, as here, the bulk of the defendant's documents are in California, the transferee venue. 566 F.3d at 1346. The court reached this conclusion despite the existence of documents in Europe and Washington, D.C., which were arguably easier to ship to Texas, because such documents would "need to be transported in any event" and "it is only slightly more inconvenient or costly to require the transportation of those materials to California than Texas." *Id.* Accordingly, as in this case, this factor favored transfer.

## CONCLUSION

Prust's newly-filed lawsuit against two local companies, brought *after* this lawsuit and motion to transfer was filed, does not justify denying Apple's motion to transfer to a more convenient forum. Accordingly, and in view of the other factors that favor transfer, Apple requests that the Court transfer this case to the Northern District of California.

---

[7] Prust's suggestion to use chartered jets assumes that the witnesses will travel to and from the same locations, at the same time, to fill the same chartered jet. Because witness appearances at trial inevitably are staggered, this assumption is not realistic. Prust also underestimates the actual costs of using chartered flights by basing his calculations on one-way travel, not round-trip travel. *See* Pope Decl. Exs. C & D (providing quotes based on one-way travel). Adjusted for round-trip travel, the actual costs are not a "few extra dollars" – but more than double.

Respectfully submitted,

*/s/ Eric M. Albritton*

Eric M. Albritton
Texas Bar No. 00790215
ALBRITTON LAW FIRM
TX Bar No. 00790215
P.O. Box 2649
Longview, Texas 75601
Telephone: (903) 757-8449
Facsimile: (903) 758-7397
E-mail: ema@emafirm.com

MORRISON & FOERSTER LLP
Michael A. Jacobs (CA Bar No. 111664)
Richard S.J. Hung (CA Bar No. 197425)
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
E-mail: mjacobs@mofo.com
rhung@mofo.com

MORRISON & FOERSTER LLP
Rudy Y. Kim (CA Bar No. 199426)
755 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
E-mail: rudykim@mofo.com

Attorneys for Defendant APPLE INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 4th day of September, 2009.

*/s/ Eric M. Albritton*

Eric M. Albritton

6